**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

ACTIVE RESOURCES, INC.
and JON NIX,

                    Plaintiffs,

v.                                     CIVIL ACTION NO.   2:22-cv-00172

JACK HAGEWOOD and
GLACIER RESOURCES, LLC,

                    Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Plaintiffs' Memorandum in Support of Attorney's Fees* (Document 23), the *Defendants' Response to Plaintiffs' Memorandum in Support of Attorney's Fees* (Document 24), the *Plaintiffs' Reply in Support of Attorney's Fees* (Document 26), and all attached exhibits.   For the reasons stated herein, the Court finds that the Plaintiffs are entitled to an award of attorney fees in the amount of $10,650.15.

**FACTS AND PROCEDURAL HISTORY**

On January 6, 2022, the Plaintiffs, Active Resources, Inc., and Jon Nix, filed a *Petition to Enforce Settlement Agreement* ("Complaint") in the Circuit Court of Fayette County, West Virginia. (Document 1-1).   On April 8, 2022, the Defendants, Jack Hagewood and Glacier Resources, LLC, removed the case to this Court, purportedly based on diversity jurisdiction. (Document 1).   Plaintiff Active Resources, Inc., is a Delaware Corporation with its principal place of business in Tennessee, and Plaintiff Jon Nix is a citizen of Tennessee. (Document 1-1).   There

is no dispute that the Defendants are both citizens of West Virginia.[1] (Document 1).  Additionally, the alleged amount in controversy exceeds $75,000 (Document 1).

Upon removal, the Defendants also filed a counterclaim against the Plaintiffs and added JJ Resources, LLC, a corporation related to the Plaintiffs, as a third-party defendant.   On April 20, 2022, the Plaintiffs moved to remand this case to the state court citing the forum defendant rule and the alleged untimeliness of the Defendants' removal. (Document 5).

The case arises from the Defendants' alleged violation of a settlement agreement on December 23, 2019, and Defendant Hagewood's breach of his fiduciary duties. (Document 1-1). This alleged violation of the settlement agreement occurred in connection with a separate lawsuit pending in McDowell County, West Virginia, and is based on Defendant Hagewood signing an affidavit in that action[2]   (Document 1-2).

In the *Notice of Removal*, the Defendants state that "[o]n or about the 10th day of January 2022, Defendants received service of the Summons and Complaint in the Circuit Court action via service on the West Virginia Secretary of State." (Document 1).   Further, it notes the addition of what it initially referred to as a "Counterclaim Defendant" but appears more accurately to be a third-party claim against JJ Resources, LLC.[3] (Document 1).   The *Notice of Removal* did not allege any deficiencies in service or potential fraud in the joinder of any defendant.

---

1 The Defendants did not contest that they were residents of the forum state. Instead, they contested whether they were properly joined and served as required by the removal statute.

2 Defendant Hagewood serves as the agent of Glacier Resources, LLC, but Glacier Resources was not specifically a party to the affidavit. While Glacier Resources was not a party to the affidavit, the affidavit includes language indicating Mr. Hagewood was acting partially in a representative capacity for Glacier Resources, LLC. At the end, the affidavit states, "[e]ntering into this agreement is not intended to be, nor shall it be construed to be, an admission of guilt against Jack Hagewood nor Glacier Resources, LLC." (Document 1-2).

3  JJ Resources, LLC is a Delaware corporation with its principal office in Tennessee. (Document 1).

On June 29, 2022, this Court issued a *Memorandum Opinion and Order* (Document 20) remanding this matter to the Circuit Court of Fayette County, West Virginia, but retained jurisdiction over the dispute regarding a potential award of attorney's fees. The Court found that questions remained regarding the appropriateness of attorney's fees and instructed the Plaintiffs to file a memorandum regarding the appropriateness and amount of fees if they still wished to pursue the same.   The Plaintiffs subsequently filed the *Plaintiffs' Memorandum in Support of Attorney's Fees* (Document 23) seeking an award of $10,678.50.   The Defendants filed the *Defendants' Response to Plaintiffs' Memorandum in Support of Attorney's Fees* (Document 24) disputing the appropriateness of the attorney's fees generally, and alternatively arguing that the proposed fees are unreasonable.  The Plaintiffs filed the *Plaintiffs' Reply in Support of Attorney's Fees* (Document 26), providing additional support for their request, disputing the Defendants' contentions, and adding a request for an additional $1,155 in fees for preparing the *Reply*.

## DISCUSSION

The Plaintiffs seek attorney's fees incurred in connection with the improper removal of this action.   They argue that the Defendants lacked an objectively reasonable basis for seeking removal based on where each Defendant is domiciled and because the removal was untimely.   The Defendants argue that despite the Court's determination that the removal was improper, attorney's fees are unwarranted because there is no evidence of bad faith on their part and their arguments were objectively reasonable even if the Court ultimately disagreed with the substantive merit. Further, they argue that the Plaintiffs are engaged in gamesmanship and the Defendants' counterclaim against the Plaintiffs demonstrates the Plaintiffs' bad faith in this action.

3

The procedure for determining the appropriateness of an award for attorney's fees following removal and remand is governed by 28 U.S.C. § 1447(c). It states, in pertinent part, that "[a]n order remanding the case may require payment of just costs and any actual expenses including attorney's fees, incurred as a result of removal." 28 U.S.C. § 1447(c). The Fourth Circuit has held that 28 U.S.C. § 1447(c) "provides the district court with discretion to award fees when remanding a case" where it finds such awards appropriate. *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996). A court does not "abuse its discretion in denying party's motion for attorney fees incurred as result of removal of action which was remanded to state court where there was no evidence of bad faith on part of parties, and it was not obvious that federal jurisdiction in action was lacking." *Id.* The Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005).

Here, the Defendants lacked an objectively reasonable basis for removal, and have compounded the issue repeatedly throughout their briefing. Accordingly, given the misapplication of clearly established law, and the consistent efforts to misdirect the Court as to the purported basis for removal, the Court finds that no objectively reasonable basis existed, and the Plaintiffs are entitled to an award of attorney's fees.

Initially, as discussed at length in the June 29, 2022 *Memorandum Opinion and Order* (Document 20), and incorporated herein, the purported basis for removal rested on a deeply flawed theory that ran counter to established precedent. To endorse the Defendant's interpretation of the

4

well-established forum defendant rule would have required this Court to employ a novel interpretation of the statute that would produce untenable and absurd results.   In cases like this, involving *only* resident defendants, the forum defendant rule cannot permit the type of novel removal theory presented by the Defendants.   In its Memorandum Opinion, the Court explained the application of the forum defendant rule, highlighting the distinctions between cases with only resident defendants, and cases with both resident and non-resident defendants

Despite the Court's discussion and explanation, the Defendants have continued to pursue the argument that the case law on the forum defendant rule was unsettled in cases such as this.   As previously and extensively set forth, that is not the case.   Although the Defendants essentially asserted that neither Defendant was properly joined and served, the Defendants never raised any issue of improper service until they faced potential remand, and the Court thoroughly considered and rejected this argument as a proper basis for removal.

Further, the Defendants attempt to, yet again, reinvent a basis for removal that was never previously raised.   Rather than acknowledge the flawed interpretation of the last-served defendant rule which underpinned much of their previous arguments regarding remand, the Defendants attempt, for the first time, to state that their unequivocal invocation of that rule was a mistake. Instead, they claim that the argument was truly about "snap removal" where some parties may quickly remove a case prior to the effectuation of service.   Even if the Court accepts this argument as credibly made, although it directly contradicts previous representations to the Court, the argument is unpersuasive.   The Defendants acknowledge, almost immediately, that their argument has already been rejected in this district, stating "the Southern District of West Virginia has held that snap removal is only available to non-forum defendants." (Document 24). They

attempt to circumvent this clear district precedent by arguing that a deep split exists such that the law of whether forum defendants may employ snap removal is unsettled. Despite claims that there was a deep split within the Fourth Circuit regarding whether forum defendants may employ snap removal, when no non-resident defendant exists, they have presented zero evidence of such a split. First, they reiterate the argument that the Northern District of West Virginia has endorsed their theory by pointing yet again to *Bloom v. Library Corp.*, 112 F. Supp. 3d 498 (N.D.W.Va. 2015), a comparison already rejected by this Court in its previous *Memorandum Opinion and Order*. (Document 20). As stated then, and repeated here, that case involved a properly served non-forum defendant, which allowed for snap removal prior to the effectuation of service on the resident defendant. *Bloom*, 112 F. Supp. 3d at 506. Here, there is no such non-forum defendant. Additionally, the Defendants point to a number of other cases throughout districts in the Fourth Circuit which purportedly support this argument. However, the cited cases only further undermine the notion that such a split exists. Every case cited, except for one, either upholds snap removal *only* by a non-forum defendant or rejects snap removal altogether. The Defendants only identified a single case from the Western District of North Carolina which they claim supports their position by upholding snap removal by a forum defendant. However, in that unreported case, *Annese v. Diversey, Inc.,* the Court rejected the motion to remand as untimely, and then in dicta, briefly states that the failure to properly serve the defendants prior to removal allowed for snap removal. 3:17-cv-5-gcm, 2017 WL 2378808 (W.D.N.C. 2017). A single district court, in an unreported decision, briefly discussing approval of snap removal by a forum defendant in dicta, hardly creates an "intra circuit split." (Document 23).

6

Finally, and perhaps most glaringly, the Defendants appear to continue to either miscomprehend or misrepresent the forum defendant rule in order to justify their attempted removal. They cite another case pending before a different judge in this district, *Roberts v. Nix*, 1:22-cv-235 (S.D.W.Va.) (Faber, J.), to support their approach. There, they claim that the Plaintiffs in this case removed a companion case under "nearly identical circumstances." (Document 24). However, the distinction between the procedural and factual circumstances of these cases highlights the objective unreasonableness of their attempt to remove this matter. In *Roberts*, the Defendants (the Plaintiffs, here) removed the matter because none of the *defendants* in *Roberts* are residents of West Virginia. Accordingly, the forum defendant rule would have no relevant application in that case. Here, the circumstances are flipped, which is precisely why the forum defendant rule is applicable. In sum, the Defendants have provided no objectively reasonable basis that ever existed to support removal of this case, and the Plaintiffs are entitled to reasonable attorney's fees.

Next, consideration turns to the appropriate fee amount. The Fourth Circuit has held that "[i]t is for the district court in the first instance to calculate an appropriate award of attorney's fees." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995). "Courts evaluate attorney's fees under a reasonableness standard." *Best Medical Intern., Inc. v. Exkert & Ziegler Nuclitec GmbH*, 565 Fed.Appx. 232, 236 (4th Cir. 2014). "The proper calculation of an attorney's fees award involves a three-step process." Id. (citing *McAfee v. Bozcar*, 738 F.3d 81, 88 (4th Cir. 2013)).

First, "[i]n calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson*

*v. Equifax Information Services, LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)).   In determining this figure, the court's discretion should be guided by twelve factors, including:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney[s]; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id* (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978). "Second the court 'must subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Best Medical Intern., Inc.,* Fed.Appx. at 237 (citing *McAfee*, 738 F.3d at 88). "Third, and finally, the court 'should award some percentage of the remaining amount, depending on the degree of success enjoyed by the party." *Id.*

Here, the Plaintiffs submitted a claim of attorney's fees in the amount of $10,678.50 for the work of three attorneys based solely on work on the remand motion analysis, briefing, and fee arguments, and an additional $1,155 in fees in relation to the filing of the reply memorandum, for a total of $11,833.50.   The fees (detailed in Document 23-2, and Document 26, p.5 n.1) account for 8.1 hours of work by Jared M. Tully, at $495/hour, 15.8 hours of work by Alex J. Zurbuch, a managing associate, at $350/hour, and 7.4 hours of work by Shannon L. Rutherford, an associate, at $310/hour.   To support the reasonableness of the request, in addition to a fee ledger, the Plaintiffs provided a *Declaration of Jared M. Tully* (Document 23-3) justifying his fee request, a

*Declaration of Michael B. Hissam, Esq.* (Document 26-1) endorsing the reasonableness of the request, and a *Declaration of Troy N. Giatras, Esq.* (Document 26-2) also endorsing the reasonableness of the request.

To contest the request, the Defendants raise multiple arguments. First, they argue that the fee request fails to consider the required lodestar factors. They argue that the fees are not reasonable or prevailing within the community. Further, they argue that Plaintiffs' attorneys' use of block-billing and vague ledger entries create difficulties in evaluating the reasonableness of the request and justify a reduction in the fee amount. They request that the Court impose a $250 limit on reasonable fees, a 15% reduction in fees due to block-billing, a 20% reduction for any vague entries, and elimination of any unnecessary or duplicative entries.

First, the Court evaluates an appropriate lodestar amount. The Court begins by examining the reasonable rate, considering the appropriate lodestar factors. The three attorneys utilized have a range of experience, and thus the appropriate rates for each are certainly different. The Plaintiffs have supplied multiple affidavits by reputable and experienced attorneys in the area, supporting the rates as reasonable. Further, they have attested that this is both the customary rates and the longstanding agreed upon rate between the Plaintiffs and these attorneys.

The Defendants are correct that a $250/hour rate has been an accepted rate in many cases in this district. However, courts have also approved higher rates in improper removal cases in this district, *see e.g. Lockhart v. Dolgencorp, LLC*, 5:18-cv-01296, 2019 WL 3211264 (S.D.W. Va. 2019) (approving $325/hour rate); *Gabe v. Dolgencopr, LLC*, 5:17-cv-04380, 2018 WL 5985687 (S.D.W. Va. 2018) (approving rates of $425/hour and $300/hour); *Harms v. Ditech Financial LLC*, 5:17-cv-03981, 2018 WL 3945616 (S.D.W. Va. 2018) (approving a $290/hour

rate); *see also, Johnson v. Ford Motor Co.*, No. 3:13-CV-06529, 2018 WL 1440833, at \*5 (S.D.W. Va. Mar. 22, 2018) (Eifert, M.J.) (providing a review of recent fee awards in this district and concluding that prevailing rates for attorneys range from $150 to $550).   Additionally, the notion that the rate should be the same for three attorneys with large variations in experience is certainly out of step with the common practice in this market.   Thus, the Court is unpersuaded that all of the work performed by three separate attorneys of different experience should be billed at the same rate.

Further, perhaps if this improper removal case was limited to a simple discussion of the forum defendant rule, the Court may be persuaded that the inclusion of more senior attorneys with higher hourly rates could be improper and thus a lower rate would be reasonable.   The instant matter was not quite so simple.   As discussed, the Defendants voluntarily turned a simple improper removal into a convoluted and complicated argument, introducing everchanging unrelated and confused legal principles.   Accordingly, the oversight of a more experienced attorney who can reasonably demand a higher rate was necessitated under the circumstances. Therefore, upon consideration of the customary fees, similar fees accepted, the experience of the attorneys, the nature of the relationship between the attorney and client, the skill required and the novelty of the changing legal questions, the Court finds that the proposed rates are reasonable.

As to the reasonable number of hours, it is the fee applicant's burden to establish the number of hours worked. *Wolfe v. Green, Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d.   The Plaintiffs are correct that while a removal and remand based upon the forum defendant rule is commonplace and thus should not merit significant hours, the Defendants' choice to continually reinvent the basis for removal and attach novel and changing legal justifications turned what

10

should have been a straightforward legal procedure into a more complex and confusing process. This certainly would expand the number of hours required by attorneys to properly contest the arguments raised by Defendants.   Accordingly, the number of hours presented, given the relevant lodestar factors, appears generally reasonable.

Review of the timesheets submitted by Plaintiffs reveals that the objection to the use of block-billing, however, is at least partially warranted.   In many of the entries, the timekeepers grouped multiple tasks as well as the total time expended. *See* Document 23-2.   However, many of the entries did not include such a tactic, and unlike in several of the cases cited by the Defendant, the blocks of hours billed remained relatively low.   Further, the Court cannot find that the total number of hours is facially unreasonable.   Thus, while the court finds a reduction is warranted due to the use of block billing, a reduction on the low end of previous cases of ten percent (10%) of the total appears to be all that is warranted.   The Court, however, is unpersuaded by arguments regarding the vagueness of the ledger.   Of course, the Fourth Circuit has "frequently exhorted counsel to describe specifically the tasks performed." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 180 (4th Cir.1994).   In this ledger, the Court finds that the entries provide sufficient descriptions of the work performed.   Given the limited breadth of the work for which fees are requested, descriptions which might otherwise be vague in a dispute for fees on a wide range of motions and legal questions are not so in this case. Accordingly, the Court does not find reason to reduce the fee award based on purported vagueness of entries.

Ultimately, the Court finds that the requested fee award and lode star amount of eleven thousand eight hundred thirty-three dollars and fifty cents ($11,833.50) should be reduced by ten percent (10%).   As the Plaintiffs only submitted fees related to the issue of remand, there is no

need to subtract fees or further reduce the percentage of the award as the Plaintiffs were fully successful on this issue.   Accordingly, the Court finds that the Plaintiffs are entitled to a fair and reasonable attorney fee award of $10,650.15 ($11,833.50 - $1,183.35).

## CONCLUSION

Wherefore, after careful consideration, the Court **ORDERS** that the Plaintiffs be awarded attorney fees in the amount of $10,650.15.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:     October 17, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

12